226 So.2d 1 (1969)
Philip SCHECHTMAN and Rose Schechtman, Appellants,
v.
Gerard L. GROBBEL et Ux., et al., Appellees.
No. 68-414.
District Court of Appeal of Florida. Second District.
August 13, 1969.
*2 Clyde H. Wilson, Jr., of Wilson & Wilson, Sarasota, for appellants.
A. Lamar Matthews, Jr., of Williams, Parker, Harrison, Dietz & Getzen, Sarasota, for appellees.
McNULTY, Judge.
Appellants brought suit to foreclose a purchase money mortgage executed by appellees-mortgagors. The entire dispute herein arose out of the provisions of a "rider" attached to the standard mortgage form which was used by the parties. This "rider" provided as follows:
"In order to provide an escrow for the payment of County and City taxes, mortgagors shall pay together with and in addition to the regular monthly payment a sum equal to one-twelfth (1/12th) of the current annual taxes, which said payment shall be based upon the amount of the previous year's taxes until the amount of the current tax can be ascertained at which time any necessary adjustments in the escrow figure shall be made; upon making payment of the said taxes, the official document, such as the tax receipt or said paper officially endorsed or certified, shall be placed in the hands of the said mortgagors within ten (10) days next after payment; and in the event that any taxes are not paid, satisfied and discharged, the said mortgagors may, at any time, pay the same or any part thereof, and the full amount of each and every such payment shall be immediately due and payable by the mortgagees, and shall bear interest from the date thereof until paid at the rate of ten percent (10%) per annum." (Italics supplied)
The mortgage agreement was entered into in September of 1967 and mortgagors made all payments of principal, interest and escrow tax monies until December, 1967. Thereafter, until just prior to this suit in April, 1968, the mortgagors paid only the monthly principal and interest installments to appellants, and they paid the escrow tax monies into a special tax account which they opened in a Sarasota bank. Appellants objected to this arrangement and, after an abortive, compromise settlement of the matter, brought this suit to foreclose the mortgage. The trial judge entered a final summary judgment dismissing the foreclosure action with prejudice; denied appellant's prayer for attorney's fees; and ordered that future escrow tax monies be paid through the registry of the court unless "by separate agreement, equal in dignity to the original mortgage", the parties make other arrangements. We affirm the denial of foreclosure, but reverse as to the remaining portions of the decree set forth above.
In denying the foreclosure, the trial judge predicated his conclusion on the theory that the provisions of the "rider" to the mortgage created an ambiguity; and he resolved such ambiguity, as a matter of "conscience", against a "forfeiture or foreclosure". His conscience was apparently persuaded by his specific findings that at no time were the principal and interest payments in default, and that at no time was *3 the security under the mortgage in jeopardy. We think that the learned trial judge came to the proper conclusion in denying the foreclosure, but we would suggest somewhat different bases therefor.
First of all we think that the provisions of the "rider" are not ambiguous. The obvious purpose of the "rider" was to build up an escrow fund to the credit of the mortgagors for the fulfillment of their obligation to keep the security free of tax liens.[1] The provisions thereof clearly require that such fund be built by monthly payments which are to be paid "together with and in addition to" the regular monthly payments of principal and interest, which are, of course, payable to the mortgagees. This is clear; and clearly written provisions of contracts entered into by ordinary men should be construed in the light of common understanding. Reasonable men, considering the provisions of the "rider" in this case in the light of the entire mortgage contract, cannot differ on its meaning: i.e., all monthly payments are to be paid to the mortgagees.
Further, there is nothing wrong with such a "rider". The parties were dealing at arms length; the purposes thereof are not unlawful or against public policy; and, in view of the entire mortgage transaction, it was fully supported by consideration. It is thus enforceable. The mortgagees had a right to its benefits, such as they may be, and the mortgagors had a duty to comply. But notwithstanding, the pleadings and affidavits in support of the motion for summary judgment show, without material dispute, that the mortgagors were in default of these obligations. Therefore, appellants had a legal right, if they so chose, to such redress as the principles of equity would support as meet and just.
We would agree, foreclosure does indeed seem harsh in this case. But it must also be conceded that harshness or hardship alone will not defeat a foreclosure.[2] On the other hand, foreclosure of a mortgage will be denied when the breach of the mortgage contract is merely a technical one and such breach does not place the security in jeopardy.[3] The trial judge found as true and undisputed that at no time was the security in jeopardy. The record supports such conclusion. Furthermore, it is without dispute that the principal and interest payments were current and, indeed, there is no dispute but that the escrow tax monies were also current. The only real complaint of appellants was that the escrow tax monies were paid to a bank instead of to them. Equity will not suffer a foreclosure and forfeiture under these circumstances.
As we pointed out above, however, appellants were entitled to performance under the provisions of the "rider", and appellees were in default thereof. Appellants allege in their complaint that it was necessary to procure the services of an attorney to enforce this right. Yet, because he denied foreclosure, the trial judge considered the prayer for attorney's fees "moot". We do not agree that under the circumstances of this case attorney's fees are solely dependent upon the granting of foreclosure or upon foreclosure being proper. The mortgage contract herein provides, inter alia, as follows:
"* * * Mortgagor * * * covenants and agrees * * *:
* * * * * *
5. To pay all * * * reasonable lawyer's fees * * * incurred or paid * * * by * * * Mortgagee because *4 and/or in the event of the failure on the part of the said Mortgagor to duly, promptly and fully perform, discharge, execute, effect, complete, comply with and abide by each and every the stipulations, agreements, conditions and covenants of * * * this mortgage * * * whether or not there be * * * suit pending; * * * and all said * * * expenses * * * shall be secured by the lien of this mortgage."
We would be loath to think that a court of equity would apply the rule "de minimis" to the prayer for attorney's fees herein and deny them for that reason. The provisions of the mortgage contract are clear and the parties are entitled to enforcement thereof. Therefore, notwithstanding that he denied foreclosure, the trial judge should have taken testimony to ascertain an amount for reasonable attorney's fees payable to appellants. After all, appellees were the parties in default and the record reflects no evidence of any wrong-doing on the part of appellants. Appellants may have sought an inequitable or unconscionable remedy, but their right to proper redress should not be denied.
We interpose here that we do not mean to say that the attorney's fees payable in this case ought to be measured by the same criteria which would be appropriate had foreclosure been decreed or proper. Expert testimony, it is expected, would of course take into account all factors involving the facts and circumstances of this case together with the local standards upon which reasonable attorney's fees are based.
Finally we consider the provisions of the final summary judgment in which the court ordered the escrow tax payments to be made through the registry of the court. Such a decree is without sanction or authority under the facts in this case. First of all, the provisions of the contract between the parties do not contemplate, even remotely, any such procedure; in fact, the "rider" expressly provides for other arrangements. For the court to order such procedure, then, is in effect to rewrite the contract of the parties. This the court cannot do.[4]
Secondly, neither side prayed for such relief; and to so order would be compelling a prevailing party in equity to accept "relief" he neither asks for nor desires. Indeed, it amounts either to a reformation of the contract so as to change the contractual rights of the mortgagees, or to impairing their right to enforce those which clearly appear.[5]
We conclude therefore that the trial judge was correct in denying foreclosure. We hold too, however, that appellants are entitled to such reasonable attorney's fees as the court, upon the taking of testimony may determine. Lastly, we hold that the trial judge erred in ordering the payment of escrow tax monies through the registry of the court.
It is to be noted in passing, that appellants prayed only for foreclosure. Therefore, in the absence of any prayer which may hereafter be properly amended to their complaint in which appellants seek appropriate redress or enforcement of their contractual rights, the court should leave the parties where he finds them with respect to the provisions of the "rider". We have already concluded that they are not ambiguous and that appellees are bound thereby. If they fail to abide by the provisions of such rider, then, upon proper application, such provisions are enforceable pursuant to law; except that foreclosure will not lie, we reiterate, from the breach complained of here.
Affirmed in part, reversed in part and remanded for proceedings not inconsistent herewith.
LILES, A.C.J., and MANN, J., concur.
NOTES
[1] The "rider" provides for the form and manner in which mortgagors would pay taxes, and was substituted for paragraph 2 of the mortgage the provisions of which established mortgagors' obligations to keep the security free of tax liens. Reading the two provisions in pari materia, it is obvious that only the form and manner of payment was changed, not the obligation.
[2] See Home Owners Loan Corp. v. Wilkes et ux. (1938), 130 Fla. 492, 178 So. 161.
[3] See St. Martin et ux. v. McGee et ux., et al., (Fla. 1955), 82 So.2d 736.
[4] Home Owners Loan Corp. v. Wilkes, supra.
[5] id.