951 So.2d 921 (2007)
WELLINGTON REALTY COMPANY LIMITED PARTNERSHIP, a Massachusetts Limited Partnership, Appellant,
v.
COLORALL TECHNOLOGIES INTERNATIONAL, INC., a Florida corporation, Appellee.
No. 4D06-1597.
District Court of Appeal of Florida, Fourth District.
February 21, 2007.
Rehearing Denied April 10, 2007.
John B. Agnetti and Torrence R. Phillips of Hoffman, Larin & Agnetti, P.A., Miami, for appellant.
Howard K. Coates, Jr., and Mary F. April of The Coates Law Firm, Wellington, for appellee.
POLEN, J.
Appellant Wellington Realty Company Limited Partnership ("Wellington") appeals final summary judgment entered in favor of appellee ColorAll Technologies International, Inc. ("ColorAll"). We reverse and remand with instructions for the trial court to enter summary judgment in favor of Wellington.
On March 24, 2000, ColorAll and Wellington executed a letter of understanding stating that they intended to enter into a build-to-suit lease, whereby Wellington would construct a new 6,100 square foot building for ColorAll to occupy in Pompano Beach, Florida. The letter of understanding stated, in pertinent part, that ColorAll would pay all increases in real estate taxes after the "base year of occupancy." About four months later, the parties executed the actual lease, which expressly incorporated the letter of understanding. The relevant provisions of the lease were as follows:
This is a "build to suit" lease which shall commence upon completion of the construction of the improvements on the property . . . Attached hereto and made a part hereof as Exhibit "A" is a copy of letter of understanding dated March 24, 2000.
The base annual rent, including base year real estate taxes, shall be payable in monthly installments of $4,600.00, plus applicable sales tax . . . Lessee shall be responsible for all utility payments and security deposits, together with any increase in real estate taxes *922 after the base year of occupancy. The "base annual rent" includes the real estate taxes at their current assessment as of the date hereof. Any increase in the real estate taxes, and/or intangible tax will be paid by Tenant on a pro-rated basis, monthly, in addition to and payable concurrently with, the base rent.
(Emphasis added).
ColorAll moved into the building on December 20, 2001. During its first year of occupancy, it paid the monthly rent installments of $4,600, plus sales tax, to Wellington, in addition to a pro-rated amount for the eleven days it occupied the building in 2001. However, in November 2002, Wellington, under the impression that the base year of occupancy was 2001 and that ColorAll therefore owed it the increase in real estate taxes from 2001 to 2002 ($9,272.23), placed ColorAll on notice that it was to pay that amount. ColorAll refused to remit payment and Wellington filed a complaint for breach of contract seeking $9,272.23 in damages.
ColorAll proceeded to file a counterclaim seeking a declaration of its rights and obligations under the lease, in particular regarding the real estate tax increase provision. Wellington responded by filing a motion for summary judgment. ColorAll served its response and filed a cross-motion for summary judgment. The trial court held a hearing on the motions and entered an order granting ColorAll's cross-motion and denying Wellington's motion. Purportedly applying this court's holding in Handelsman v. Royal Trust Bank of Palm Beach, N.A., 426 So.2d 1220 (Fla. 4th DCA 1983), the trial court found that the "base year of occupancy" was not the same as the date of first possession, and concluded that the "base year of occupancy" was 2002. The court subsequently entered final summary judgment for ColorAll based on the order.
Wellington now argues that the trial court erred in entering summary judgment against it based upon Handelsman, see id.; according to Wellington, the lease unambiguously provided that the "base year of occupancy" was that in which ColorAll first took possession  2001. A grant of summary judgment based upon construction of a written instrument is reviewed de novo. Volusia County v. Aberdeen at Ormond Beach, 760 So.2d 126, 131 (Fla.2000). Where the language of a contract is clear and unambiguous, the court can give to it no meaning other than that expressed. Paddock v. Bay Concrete Indus., Inc., 154 So.2d 313, 316 (Fla. 2d DCA 1963). In this appeal, both parties agree that there are no genuine issues of material fact regarding the correct "base year of occupancy." Both Wellington and ColorAll are also of the same opinion that there are no ambiguities in the language of the lease. We are inclined to agree with both assertions. However, we find that the trial court misapplied Handelsman, which in turn caused it to incorrectly determine the base year of occupancy as 2002, as opposed to the correct year, 2001. See Handelsman, 426 So.2d at 1221-22.
In Handelsman, landlord and tenant entered into a build-to-suit lease agreement whereby tenant would pay, inter alia, the increase in real estate taxes on the property "occurring from the beginning of the lease and throughout its term." Id. at 1220. Although tenant took possession in 1971, construction was not completed until 1972, the first year for which taxes were assessed on the property in its improved state. Id. at 1221. The trial court, in an action for declaratory relief filed by tenant, concluded that the base year for computation of tax increases was 1972. Id. In affirming, this court cited language in the lease which stated that tenant was to pay landlord the increase in real property taxes "on said premises . . . occurring from *923 the beginning of the lease throughout its term." Id. at 1222. We noted that the parties did not contract to lease a vacant parcel of real property; they contracted for the lease of a structure situated on improved real estate. Id. Until the landlord completed the structure, no basis existed for computation of the ad valorem taxes on the demised property. Id. Therefore, to use ad valorem taxes assessed on the unimproved property in the year prior to the placement of the demised premises on the tax rolls (1971) would be "inconsistent and illogical." Id. (citing § 192.042(1), Fla. Stat. (1983)).[1]
Unlike Handelsman, the real property at issue in this case was "substantially completed" in 2001, prior to ColorAll taking possession, and was therefore assessed on January 1, 2002, based on the 2001 improvements. See id. The completeness of the property as of January 1, 2002, is not only evidenced by the large increase in real estate taxes from 2001 to 2002 ($23,000 to $32,300), but also by the fact that ColorAll began using the facilities on December 20, 2001, and paid a pro-rated rent for the remaining eleven days of that year, during which time it occupied and presumably utilized the buildings for business purposes. Furthermore, a City of Pompano Beach Building Official awarded Wellington a temporary certificate of occupancy for the property on November 19, 2001. According to the standard City of Pompano Beach Application Request for Temporary Occupancy form, "[a] temporary certificate of occupancy may be issued . . . providing the building to be occupied has, to the satisfaction of the Building Official, met all the [Florida Building] Code provisions related to sanitary facilities, electric service, means of egress, fire resistive separation, structural adequacy, and the life safety requirements." And perhaps even more telling of the property's suitability for occupancy in 2001 is the "punch list" (to-do list) drafted by ColorAll on November 27, 2001, in which ColorAll walked through the improved property. Notably, the "punch list" listed only minor problems such as windows and floors which needed cleaning and walls that required repainting.
Therefore, as opposed to Handelsman, the property at issue in this case was substantially completed during the year of first possession (2001), thus making that year the proper basis for computation of ad valorem taxes. See id. This not only demonstrates that Handelsman did not provide a bright-line rule for determination of "base year" where construction of property central to a build-to-suit lease has not been completed as of the date of first occupancy, but also that Handelsman is not controlling to the case at bar. See id. As such, we find that the trial court erred in relying on Handelsman in determining summary judgment in favor of ColorAll, and we conclude that the court should have entered judgment for Wellington.
Based on the foregoing, we reverse and remand with instructions to the trial court to enter summary judgment in favor of Wellington.
*924 Reversed and Remanded with Directions.
GUNTHER and HAZOURI, JJ., concur.
NOTES
[1] Section 192.042(1), Florida Statutes (1983), provided:

Date of assessment.  All property shall be assessed according to its just value as follows:
(1) Real property, on January 1 of each year. Improvements or portions not substantially completed on January 1 shall have no value placed thereon. "Substantially completed" shall mean that the improvement or some self-sufficient unit within it can be used for the purpose for which it was constructed. (Emphasis added).